# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1249-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CM1097

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PETER J. LONG,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed.*

¶1 LAZAR, J.[1] Peter J. Long[2] appeals from his judgment of conviction for disorderly conduct. He argues that the circuit court erred when it denied his motion to suppress and his subsequent motion for reconsideration. This court concludes that the warrantless entry into a residence did not violate Long's constitutional rights and affirms.

## BACKGROUND

¶2 On the evening of November 21, 2023, officers were dispatched to a disturbance at Long's residence. The reporting party, Alice,[3] a juvenile female, advised dispatch that Long was attacking her mother. Dispatch advised officers that the disturbance was physical and that a male could be heard yelling in the background.

¶3 Upon arrival, officers repeatedly knocked on the front door. After receiving no response, they began to look around the outside of the house to detect any signs of individuals in distress inside the home. At some point, Deputy Gabriel Wildeman observed two juvenile females inside the home while peering

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version. Long filed a motion for a three-judge panel on July 29, 2024, asserting that this appeal presents constitutional issues pertaining to unlawful search and seizure that warrant a published decision. This court disagrees. Accordingly, the motion is hereby denied.

[2] Despite filing a motion for a three-judge panel, Long did not file a reply brief in this appeal, leaving this court without the benefit of additional argument. This court addresses this appeal on the merits even though Long has arguably conceded any arguments raised in the State's response brief. *See Apple Hill Farms Dev., LLP v. Price*, 2012 WI App 69, ¶14, 342 Wis. 2d 162, 816 N.W.2d 914 (failure to file a reply brief deemed a concession to respondent's argument).

[3] In order to protect her confidentiality, consistent with WIS. STAT. RULE 809.19(1)(g), this court refers to the juvenile by a pseudonym.

into a sliding glass patio door at the rear of the residence. Wildeman motioned for them to come over to him, and one of the two juveniles (Alice), walked towards Wildeman and the sliding glass door.

¶4 There is some disagreement about what happened next. Wildeman testified at an evidentiary hearing that the juvenile then "opened" the sliding door. After the defense repeatedly played a portion of Wildeman's bodycam footage, Wildeman clarified that the juvenile had begun opening the door, that he then placed his hand on the door handle to "assist in opening" the door, and that it was his belief, based upon his interaction with the juvenile, that she wanted the door to be opened. Based on the video evidence and Wildeman's testimony, the circuit court found that the child unlocked the door.

¶5 Once the door was open, Wildeman requested that the juvenile step through the door to exit the residence. Instead, however, the juvenile left the door open, stated "they're hiding in the room with us," and then walked away back into the residence. Wildeman testified that he took these actions and statements to mean that Wildeman and the other officers were invited into the home. For his part, Long denies that the juvenile opened the sliding door and denies that the sliding door even had a functioning locking mechanism.

¶6 Ultimately, after gaining entry into the residence and speaking with Long and the alleged victim, officers placed Long into custody. The State charged Long with one count of disorderly conduct with a domestic abuse assessment. Long responded by filing a motion to dismiss, asserting that the elements of disorderly conduct could not be met and that his conduct underlying the charge was protected by the First Amendment.

¶7   He subsequently filed a motion to suppress and dismiss, asserting that the officers' entry into his home was unlawful and violated his Fourth Amendment rights against unlawful search and seizure. Long primarily argued that Alice, who had placed the call to emergency services and interacted with officers on the night of Long's arrest, did not, as a matter of law, have the authority to consent to officers' entry into the residence. The circuit court ultimately denied both motions. In denying the motion to suppress and dismiss, the court found that Alice gave valid consent for the warrantless entry into Long's residence. Long filed a motion for reconsideration, which the court also denied. Long then pled no contest to disorderly conduct with a domestic abuse assessment and was sentenced to time served.

¶8   Long appeals, arguing that denial of his motion to suppress and dismiss violated his Fourth Amendment rights against unreasonable search and seizure and that the denial of his motion for reconsideration was an erroneous exercise of discretion.

## STANDARD OF REVIEW

¶9   The issue on appeal centers upon constitutional rights and, as such, it is subject to a two-step process of review. *State v. Moeser*, 2022 WI 76, ¶13, 405 Wis. 2d 1, 982 N.W.2d 45; *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. In reviewing a circuit court's denial of a motion to suppress, appellate courts first "uphold a circuit court's findings of historic fact unless they are clearly erroneous." *Moeser*, 405 Wis. 2d 1, ¶13 (citation omitted). Second, we "independently apply constitutional principles to those facts." *Id.* (citation omitted); *see also State v. Grady*, 2009 WI 47, ¶13, 317 Wis. 2d 344, 766 N.W.2d 729.

¶10    This court reviews a circuit court's decision on a motion for reconsideration under an erroneous exercise of discretion standard. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853; *Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶14, 396 Wis. 2d 622, 957 N.W.2d 605. Appellate courts "will affirm a discretionary decision as long as the [circuit] court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion." *Lakeland Area Prop. Owners Ass'n*, 396 Wis. 2d 622, ¶14.

## DISCUSSION

¶11    Long raises three questions on appeal: whether the circuit court violated his Fourth Amendment rights against unreasonable search and seizure when it denied Long's motions to suppress and dismiss, whether the court erroneously exercised its discretion when it denied his motion for reconsideration, and whether the court violated the general prohibition on ex parte communications by requesting a copy of Deputy Wildeman's unredacted bodycam video.

¶12    First, Long contends that the circuit court erred by relying on *State v. Tomlinson*, 2002 WI 91, 254 Wis. 2d 502, N.W.2d 177, in denying his motion to suppress and dismiss. In *Tomlinson*, police went to the home of an individual suspected of involvement in a recent homicide. *Id.*, ¶7. They knew, prior to their arrival, that the suspect had two teenage daughters. *Id.*, ¶28. When officers knocked on the back door, they were met by a juvenile female who "appeared to be 15 or 16 years old." *Id.*, ¶7. The suspect was standing nearby, inside the house. *Id.* One of the officers informed the female that they were looking for Tomlinson and asked for permission to enter the house. *Id.* The female "said

5

nothing, opened the door, and walked into the house," after which officers followed her inside and arrested Tomlinson. *Id.* Our supreme court upheld the warrantless entry, holding that the girl's actions constituted consent and that officers reasonably believed that the girl had authority to consent to the entry. *Id.*, ¶¶37-38.

¶13 Long argues that *Tomlinson* is not applicable here. He notes that the suspected crime in *Tomlinson* was greater in severity, the consenting child was high school-aged instead of "elementary school-aged," and that the search in *Tomlinson* was more limited in scope, being confined to a kitchen and hallway. Long contends that the circuit court erred when it determined that a "fourth grader in *special education* classes"[4] could consent to entry into Long's entire residence despite officers knowing that Long and another adult were also present in the home.

¶14 Warrantless searches are presumptively unreasonable. *State v. Matejka*, 2001 WI 5, ¶17, 241 Wis. 2d 52, 621 N.W.2d 891; *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). However, a warrantless search may be lawful if an exception to the warrant requirement, such as consent to enter, is present. *State v. Johnston*, 184 Wis. 2d 794, 806, 518 N.W.2d 759 (1994). Under certain circumstances, consent to search may be given by a person other than the subject of the search. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *State v. Kieffer*, 217 Wis. 2d 531, 542, 577 N.W.2d 352 (1998). Consent to search may be "obtained from a third party who possessed common authority over or other

---

[4] Long states repeatedly that Alice attends special education classes. However, the Record is devoid of specific evidence regarding disability, let alone evidence of the extent to which such disability would affect her real or perceived capacity to consent to this entry.

sufficient relationship to the premises or effects sought to be inspected." *Matlock*, 415 U.S. at 171. "[E]ven if a third party lacks actual common authority to consent to a search of the defendant's residence, police may rely upon the third party's apparent common authority to do so, if that reliance is reasonable." *Kieffer*, 217 Wis. 2d at 548.

¶15 The threshold question presented by this appeal is whether Alice actually consented to officers' entry into Long's residence. This is a question of fact, and the circuit court's finding will not be disturbed unless it is against the great weight and clear preponderance of the evidence. *Phillips*, 218 Wis. 2d at 196-97.

¶16 After reviewing Wildeman's bodycam video, the circuit court noted that it was still "very difficult to conclude what actually happened" when Alice interacted with Wildeman at the sliding glass door. The court concluded that "the child unlocked the door" but could not determine whether Wildeman or the child slid the door open based on the video alone. Consequently, the court relied on Wildeman's sworn testimony that Alice opened the door and that Wildeman only had his hand on the door handle to assist her in opening it. The court's determination that Alice gave consent for officers to enter the residence was not clearly erroneous and was supported by facts in the record. There is no basis to reverse this decision.

¶17 The next issue is whether Alice had apparent authority to consent to entry into Long's residence. Long asserts that the circuit court made an error of law when it relied on *Tomlinson* in determining that Alice had such authority, given the factual differences between Alice and the consenting individual in *Tomlinson* as well as in the surrounding circumstances. Namely, Long places

7

great emphasis on the relative youth of Alice.[5] While the court acknowledges that Alice was young, nothing in ***Tomlinson*** suggests that a ten-year-old is unable to give valid consent. This court need not resolve this question, however, since warrantless entry was justified by exigent circumstances.

¶18 When, in light of the totality of the circumstances, "the exigencies of the situation make the needs of law enforcement" sufficiently compelling, "a warrantless search is objectively reasonable under the Fourth Amendment." ***State v. Hay***, 2020 WI App 35, ¶10, 392 Wis. 2d 845, 946 N.W.2d 190 (quoting ***Missouri v. McNeely***, 569 U.S. 141, 148-49, 156 (2013) (citation omitted)); ***State v. Howes***, 2017 WI 18, ¶¶23, 29, 373 Wis. 2d 468, 893 N.W.2d 812. Exigent circumstances are present when "the need for a search is urgent and there is insufficient time to obtain a warrant." ***State v. Dalton***, 2018 WI 85, ¶39, 383 Wis. 2d 147, 914 N.W.2d 120.

¶19 Here, officers were advised by dispatch that a young child was reporting a physical disturbance inside of Long's residence. Due to the 911 call, officers were aware that the residence was occupied. As a result, they became concerned when repeated attempts to make contact at the front door of the home went unanswered. When Alice made contact with Wildeman at the sliding glass door in the back of the house, she indicated that she and other occupants of the residence were "hiding" somewhere inside. Based upon all of this information, it was not unreasonable for officers to forego the process of obtaining a warrant for entry into the home. Even if a warrant could have been obtained within minutes, it

---

[5] Alice was ten years old, as opposed to the sixteen-year-old consenting individual in ***State v. Tomlinson***, 2002 WI 91, ¶7, 254 Wis. 2d 502, N.W.2d 177.

would have been reasonable for officers to conclude that there was an emergency situation and that any delay could seriously impact the safety of the individuals involved. Accordingly, the circuit court did not err when it denied Long's motion to suppress and dismiss.

¶20 Next, Long asserts that the circuit court erred when it allowed the State to submit Wildeman's unredacted bodycam video even though the unredacted video was not shown at the suppression motion hearing or entered into evidence. Long characterizes the above as an impermissible ex parte communication. He is simply incorrect.

¶21 An ex parte communication is "a one-sided communication between a litigant or their representative and the judge presiding over a case involving the litigant." *Miller v. Carroll*, 2019 WI App 10, ¶24, 386 Wis. 2d 267, 925 N.W.2d 580. A judge's participation in ex parte communications is generally prohibited by Supreme Court Rule 60.04(1)(g). The right to an impartial judge is a requirement of due process under both the United States and Wisconsin Constitutions. *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005); *State v. Washington*, 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978). Ex parte communications raise concerns of partiality and can serve as the basis for rebutting the presumption that a judge has acted "fairly, impartially, and without bias." *Miller*, 386 Wis. 2d 267, ¶12.

¶22 The copy of Wildeman's bodycam video that Long introduced at the suppression motion hearing was redacted and blurred Alice's face to preserve her confidentiality. As a result, the circuit court had difficulty observing the interaction between Wildeman and Alice at the sliding glass door and also struggled to clearly hear the bodycam audio. The court's request for the

unredacted version was not an ex parte communication; Long was present and did not object when the court indicated that it wanted to watch both body camera videos again without the redactions. Nor could he legally have done so since a communication made in open court between a judge and a litigant, in the presence of the complaining litigant, could not reasonably be considered a one-sided communication under any circumstances.

¶23 Finally, the circuit court did not err when it denied Long's motion for reconsideration because Long failed to demonstrate that the court erroneously exercised its discretion. As discussed, the court's denial of Long's motion to suppress and dismiss was properly decided.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.